IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL COOK,                              )
                                          )
                    Plaintiff,            )
                                          )
        vs.                               )   Civil Action No.  08-0089
                                          )
NEW CASTLE AREA SCHOOL DISTRICT;          )
GEORGE GABRIEL, Superintendent of         )
New Castle Area School District;          )
FRED MOZZOCIO, Former President           )
of the Board of School Directors;         )
and PAUL A. FULENA, Director of           )
Buildings & Grounds of New Castle         )
Area School District,                     )
                                          )
                    Defendants.           )

MEMORANDUM and ORDER

Gary L. Lancaster,
District Judge.                               December 16, 2008

        This is a civil rights case.  Plaintiff, Daniel Cook,

brings this action pursuant to the Civil Rights Act of 1871, 42

U.S.C. § 1983 ("section 1983") and Article I, § 7 of the

Pennsylvania Constitution.  Plaintiff alleges that defendants

retaliated against him for exercising his First Amendment rights.

[Doc. Nos. 1, 15].  Specifically, plaintiff, a long time janitorial

employee for defendant New Castle Area School District, alleges

that defendants eliminated his janitorial position, deliberately

treated him unfairly at his new maintenance position, and

suppressed his speech because of his political support for certain

local political candidates in violation of his civil rights.  Id.

        Defendants have filed a motion for summary judgment

arguing that plaintiff cannot establish a violation of section 1983

or of the Pennsylvania Constitution. [Doc. No. 24]. For the reasons set forth below, defendants' motion for summary judgment will be granted.

## I. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are not in dispute. We construe all other facts in the light most favorable to plaintiff, the non-moving party.

Plaintiff is an employee of defendant New Castle School District (NCSD). Plaintiff has been employed by NCSD since 1986. Formerly a janitor, he currently holds a maintenance position at NCSD. Plaintiff's supervisor at NCSD is defendant Paul Fulena, Director of Buildings and Grounds. Defendant George Gabriel is the Superintendent of NCSD. Defendant Gabriel reports directly to the NCSD School Board. Defendant Fred Mozzocio was president of the School Board between December, 2004 and December, 2007.

While an employee of NCSD, plaintiff worked for several local political campaigns as a volunteer. For instance, plaintiff volunteered for Wayne Alexander in the 2003 mayoral campaign. Mr. Alexander ran for mayor against Richard DeBlasio, defendant Gabriel's brother-in-law. Plaintiff placed signs supporting Mr. Alexander in plaintiff's sister's front yard located across the street from the NCSD administrative office building. In the spring of 2007, plaintiff also volunteered for defendant Mozzocio's

campaign for re-election to the School Board. In the fall of 2007, however, plaintiff switched his support to three candidates running against defendant Mozzocio for the School Board position. Plaintiff's work on these campaigns was not in violation of any NCSD rules or policies.

Plaintiff alleges that defendants retaliated against him because of his political activies. Plaintiff's first allegation of relation relates to his former janitorial position. On October 17, 2006, NCSD gave plaintiff notice that it planned to eliminate plaintiff's janitorial position and recreate it. The recreated position only included one change: it was a Tuesday through Saturday position while the original position was a Monday through Friday position. The NCSD, however, did not eliminate plaintiff's janitorial position immediately. Plaintiff's responsibilities, therefore, remained the same.

On May 31, 2007, NCSD posted a new maintenance position. The position required evidence of competency. Plaintiff submitted a bid for the position but did not include evidence of competency in his bid. The parties dispute whether plaintiff and defendant Fulena had a conversation about this maintenance position before it was posted. Plaintiff states that defendant Fulena inquired whether plaintiff would bid on this job and plaintiff told him that he was not interested. The parties also dispute whether defendant Gabriel called plaintiff after he submitted his bid and asked why

he previously misled defendant Fulena about his interest in the position. Plaintiff states that he told defendant Gabriel that "had he said he was interested, then defendant Fulena, as Director of Buildings and Grounds, and defendant Gabriel, as Superintendent, would not have asked the school board to create this new position." Plaintiff's Concise Statement of Material Facts at ¶ 14. Defendants deny that these conversations occurred.

The parties also disagree as to whether NCSD created the maintenance job for David Colella, an NCSD employee who was junior to plaintiff. Plaintiff states that defendant Mozzocio told him via a telephone conversation that "the job was already promised to Colella." Plaintiff's Concise Statement of Material Facts at ¶ 16. Defendants deny that this telephone conversation took place or that the position was created for Mr. Colella. There is no dispute, however, that NCSD awarded the maintenance job to Mr. Colella.

On June 12, 2007, plaintiff filed a grievance with the Teamsters Local Union 261 regarding NCSD's decision to award the maintenance position to Mr. Colella. Plaintiff's grievance proceeded to a meeting between him, defendant Gabriel, defendant Fulena, and Doug Robbins from Teamsters Local Union 261. The parties dispute the substance of this meeting. Plaintiff asserts that, although he described his maintenance experience at the meeting, defendants still refused to consider him for the maintenance position. Plaintiff's notes, however, indicate that

4

defendant Gabriel stated "if you can show competency to me, the job is yours!!" Defendants' Response to Plaintiff's Concise Statement of Facts at ¶ 20. Plaintiff also asserts that defendant Gabriel accused him of being "political" and of intending to embarrass him before the School Board. Plaintiff's Concise Statement of Material Facts at ¶ 20. Defendant Gabriel denies that he made these accusations.

On October 29, 2007, a formal grievance hearing was held regarding plaintiff's claim. At the hearing, the representative for NCSD testified that plaintiff did not prove his competency prior to the awarding of the bid. According to the NCSD representative, defendant Gabriel selected Mr. Colella because Mr. Colella submitted evidence of competency in his application pursuant to the May 31, 2007 job posting. Plaintiff concedes that he did not submit evidence of competency with his bid. At the grievance hearing, however, plaintiff presented four letters supporting his competency and photos showing his home improvements. The arbitrator, therefore, found plaintiff to be competent for the maintenance job. Based on the hearing officer's conclusion of competency, NCSD awarded plaintiff the maintenance position.

Because of this dispute over the maintenance position, plaintiff switched his active support in the School Board election from defendant Mozzocio to three other candidates. On the morning of November 6, 2007, the date of the election, plaintiff discussed

the election with cafeteria worker, Jackie Trott. Plaintiff told Ms. Trott that he and those in his neighborhood were supporting the "girls", i.e., the female candidates running against defendant Mozzocio for School Board President. Plaintiff's Concise Statement of Material Facts at ¶ 26. Ms. Trott responded that she planned to work the polls for defendant Mozzocio. Plaintiff contends that he was on a break when the conversation occurred; he does not know whether Ms. Trott was also on a break.

Later that day, defendant Mozzocio informed Principal Andrew Gangliero that plaintiff was inappropriately discussing the School Board election with NCSD employees. Defendant Mozzocio asked Mr. Gangliero to tell plaintiff to stop having these discussions or "things could get ugly." Plaintiff's Concise Statement of Material Facts at ¶ 27. Mr. Gangliero then relayed this message to plaintiff. Defendant Mozzocio disputes that he intended to be threatening; rather, he asserts that he wanted plaintiff to stop discussing the election with Ms. Trott because she is an "older woman" and should be left alone. Appendix to Defendants' Response to Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at Exhibit 7. Thereafter, plaintiff called defendants Gabriel and Fulena to complain about the conversation with Mr. Gangliero. No action was taken to discipline plaintiff for his conversation with Ms. Trott.

On November 12, 2007, plaintiff began his new maintenance

job.  Pursuant to the terms of the Collective Bargaining Agreement,
NCSD imposed a 30 day probation period on plaintiff regarding his
competency.  Plaintiff contends that defendant Gabriel threatened
defendant Fulena to rule plaintiff incompetent at the conclusion of
the probation period or else defendant Fulena would be fired.
Plaintiff states that defendant Fulena therefore forced plaintiff
to perform tasks alone that were usually designated for two people.
Defendants Gabriel and Fulena deny plaintiff's allegations.  It is
not in dispute that, after 30 days, defendant Fulena gave plaintiff
a favorable evaluation and plaintiff has remained in the
maintenance position to this day.

## II.  STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment may be
granted if, drawing all inferences in favor of the non-moving
party, "the pleadings, the discovery and disclosure materials on
file, and any affidavits show that there is no genuine issue as to
any material fact and that the movant is entitled to judgment as a
matter of law."  To defeat summary judgment, the non-moving party
cannot rest on the pleadings, but rather must go beyond the
pleadings and present "specific facts showing a genuine issue for
trial." Fed. R. Civ. P. 56(e).

The mere existence of some factual dispute between the
parties will not defeat an otherwise properly supported motion for

summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. Id. at 248-49. Under these standards, the non-moving party must do more than show there is "some metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Although inferences must be drawn in favor of the non-moving party, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)); see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990)

("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint ... with conclusory allegations of an affidavit").

The non-moving party has the burden of producing evidence to establish each element of her claim. <u>Celotex</u>, 477 U.S. at 322-23. The non-movant must show more than "[t]he mere existence of a scintilla of evidence" for elements on which she bears the burden of production. <u>Anderson</u>, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec.</u>, 475 U.S. at 587 (citations omitted).

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law because no reasonable jury could return a verdict in her favor. It is on this standard that the court has reviewed defendants' motion and plaintiff's response thereto.

III. <u>DISCUSSION</u>

A. <u>Plaintiff's Section 1983 Claims</u>

Plaintiff contends that defendants retaliated against him for supporting certain political candidates. He alleges that

defendants violated his First Amendment rights by eliminating his janitorial position, deliberately treating him unfairly at his new maintenance position, and suppressing his speech related to the 2007 School Board election.

Defendants contend that plaintiff cannot establish a section 1983 violation because (1) he was not injured; (2) there was no causal relationship between plaintiff's campaign activities and the alleged harms; (3) there is no evidence of a deprivation of plaintiff's First Amendment rights; (4) there is no evidence of a policy of retaliation set forth by the School Board; and (5) qualified immunity protects the individual defendants.

### 1.  The Janitorial and Maintenance Positions

The Court of Appeals for the Third Circuit has held that, to establish a _prima facie_ case of political patronage discrimination/retaliation, an employee who claims to have suffered from an adverse employment decision because of political motivations must show that: "(1)[]he was employed at a public agency in a position that does not require political affiliation, (2) []he was engaged in constitutionally protected conduct, and (3) this conduct was a substantial or motivating factor in the government's employment decision." Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007) (citing Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997)).  If the employee makes this _prima facie_ case, the burden then shifts to defendants

to "prov[e] by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." Id. (citation and quotation marks omitted).

Here, the parties do not dispute that plaintiff satisfies the first two element of a prima facie case of political patronage retaliation. First, plaintiff was a janitorial employee and is currently a maintenance employee for a school district. Political affiliation and policymaking play no role in these positions and, thus, plaintiff's employment may not be adversely affected because of his political affiliation. See Brown v. Trench, 787 F.2d 167, 168-69 (3d Cir. 1986) (explaining that public employees, such as clerical employees, who do not create policy or formulate broad governmental goals may not be fired because of their political positions). Second, the First Amendment protects public employees who engage in the political process. This protection includes employees who support losing candidates or fail to support winning candidates. See Galli, 490 F.3d at 272-73. Accordingly, plaintiff's support of local elections is constitutionally protected conduct.

The parties dispute, however, the third prong of plaintiff's prima facie case of political patronage discrimination -- whether there is sufficient evidence of record to raise an inference that plaintiff's political conduct was a substantial or motivating factor in defendants' adverse employment decisions.

11

This prong requires evidence of both knowledge and causation. Stephens, 122 F.3d at 177-180. A plaintiff may not rely on mere speculation and conclusory assertions in establishing that a defendant made adverse employment decisions based on political affiliation. See Liotta v. Borough of Springdale, 985 F.2d 119, 122 (3d Cir. 1993); Laskaris v. Thornburgh, 733 F.2d 260, 265-66 (3d Cir. 1984). Evidence that has only "a vague aura of politically motivat[ion]" is "far too insubstantial" to show that a plaintiff was injured because of his political expression. Laskaris, 733 F.2d at 266.

Plaintiff states that defendants knew that he: (1) placed signs in 2003 supporting a candidate opposing defendant Gabriel's brother-in-law; and (2) supported candidates running against defendant Mozzocio in the fall of 2007. Plaintiff has not identified any other evidence showing defendants' knowledge of plaintiff's political affiliations.

With regard to the political activity that occurred in 2003, plaintiff has adduced no evidence that defendants knew which candidate plaintiff supported or that plaintiff placed signs for the candidate opposing defendant Gabriel's brother-in-law in his sister's yard. Because plaintiff has failed to demonstrate the necessary element of knowledge related to the 2003 mayoral elections, his claim fails.

Morever, even if we had found evidence of knowledge, we

still cannot find a causal link between plaintiff's political activity and NCSD's alleged wrongful employment decisions. NCSD's alleged adverse employment decisions did not begin until October 17, 2006, approximately three years after the 2003 mayoral election.[1] Where temporal proximity is missing, it is difficult to establish a causal link without evidence of intervening acts of animus. Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997) (finding that, under the ADA, the passage of 19 months between the protected conduct and the alleged retaliation, without evidence of intervening antagonism, was conclusive proof against retaliation). Plaintiff does not allege an intervening act of animus. Accordingly, plaintiff has failed to show a causal

---

[1]

We will not consider the alleged denial of plaintiff's February, 2005 "Pride and Promise" award as an actionable adverse employment decision. The statute of limitations for a section 1983 claim is two years. Cindrich v. Fisher, No. 05-1348, 2006 WL 931616, at *3 (W.D. Pa. Apr. 10, 2006). Accordingly, this claim is precluded by the statute of limitations. See id. We understand, however, that a past act that is time barred may still be viewed as background evidence of a timely claim. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-14 (200); Fralin v. C & D Sec., Inc., No. 06-2421, 2008 WL 2345957, at *4 (E.D. Pa. 2008). Here, however, plaintiff failed to allege this harm in his complaint, refer to it in his Brief in Opposition to Defendants' Motion for Summary Judgment, or include it in his responsive Concise Statement of Material Facts as required by Local Rule 56.1.C.1. Indeed, defendants, rather than plaintiff, referenced it in their briefs. Because plaintiff did not assert that the denial of this Award is evidence of retaliation, we will not consider it here. Moreover, even if we were to consider it, it occurred over one year after the 2003 election and does not, by itself or in conjunction with other evidence, satisfy plaintiff's burden to prove discriminatory animus.

connection between his support of the 2003 mayoral election and NCSD's employment decisions.

With regard to plaintiff's political support of the candidates running against defendant Mozzocio in the 2007 School Board election, we also cannot find a causal connection to defendants' employment decisions. Plaintiff's allegations are speculative and the record does not include the "existence of a scintilla of evidence" that would entitle plaintiff to submit this case to a jury. See Anderson, 477 U.S. at 252.

First, the change in the janitorial position is not an adverse employment decision. "A public employer adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall, and hiring, based on the exercise of an employee's First Amendment rights." Porter v. Intermediate Unit, No. 06-1145, 2007 WL 2597911, at *8 (W.D. Pa. Sept. 5, 2007) (citing Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003)) (internal quotation marks omitted). Defendants decision to change plaintiff's janitorial position from a Monday through Friday to a Tuesday through Saturday job was not an adverse employment action. The record contains no evidence that the new position included a reduction in salary or benefits, was considered a demotion, or included any significant changes in job responsibilities other than the days worked. The change in working

conditions was merely "trivial." See Brennan, 350 F.3d at 419 (explaining that an adverse employment action must be more than "trivial" or "de minimis") (quotation omitted). Moreover, plaintiff does not contend that NCSD did not have the right to eliminate the Monday through Friday position.

Further, even if it were construed to be an adverse employment decision, plaintiff's support of the candidates running against defendant Mozzocio began after defendants sent plaintiff notice in 2006 regarding the change in plaintiff's janitorial position. Because of the timing, we see no causal relationship between defendant Mozzocio's campaign for School Board and the change in plaintiff's janitorial position.

Also, we see no causal connection between plaintiff's political activities and the facts surrounding plaintiff's new maintenance position. Plaintiff claims that:(1) defendants opposed plaintiff's bid for the new maintenance position; (2) defendants imposed a 30 day probation period required plaintiff to prove his competency despite the arbitrator's finding of competency; (3) defendant Gabriel threatened defendant Fulena to find plaintiff incompetent; and (4) defendant Fulena sent plaintiff alone to complete maintenance tasks that usually require more than one person. The record does not support these allegations. Instead, the record shows that defendants had legitimate reasons for their decisions.

For instance, the record shows that defendants created the maintenance position and awarded it to Mr. Colella, a qualified candidate, <u>before</u> plaintiff switched his support in the School Board elections from defendant Mozzocio to the candidates running against defendant Mozzocio. This employment decision, therefore, could not have been motivated by political reasons connected to the 2007 election.

Moreover, NCSD awarded plaintiff the position after he gave evidence of his competency and then imposed the 30-day probation period as required by the Collective Bargaining Agreement between NCSD and Teamsters Local Union 261. We do not find that these actions were improper or politically motivated.

Additionally, although plaintiff asserts that defendant Fulena assigned plaintiff tasks that usually were completed by two employees, the evidence shows that plaintiff satisfactorily completed these tasks as assigned and was, therefore, hired. In fact, plaintiff holds a better position now as a maintenance employee than he did in 2006, the date that he alleges defendants began retaliating against him.

Finally, even if the record shows that defendants improperly denied plaintiff the maintenance position and set plaintiff up to fail, we still find no causal connection between defendants' decisions and plaintiff's political activities. There

is no evidence that defendants, specifically defendant Fulena,[2] considered political affiliation in making any of decisions related to the maintenance position. Because nothing in the record supports a conclusion that plaintiff's political views led defendants to make employment decisions, we must reject plaintiff's political retaliation claim.

In sum, we find that plaintiff's evidence and arguments regarding his political patronage retaliation claim cannot withstand defendants' motion for summary judgment. Because plaintiff has not established a <u>prima</u> <u>facie</u> case of political patronage retaliation, defendants' motion for summary judgment as to plaintiff's section 1983 retaliation claims will be granted.

### 2. <u>Regulation of Plaintiff's Election-Related Speech</u>

Plaintiff also argues that defendants improperly limited his election-related speech to his co-worker during school hours. Defendants respond that plaintiff's election-related speech was not protected and that NCSD properly limited it.

The law is clear that "the First Amendment allows a public employer to regulate its employees' speech in ways that it

---

[2]

We note that plaintiff cannot articulate why defendant Fulena would retaliate against him. Specifically, in response to the question "why would Mr. Fulena retaliate against you politically," plaintiff stated "...[t]hat's how I felt at the time. I felt because of my political affiliation that he was retaliating against me. ... I don't know why. At the time I did, but I don't now." Appendix to Defendants' Concise Statement of Material Facts at Exhibit 13.

could never regulate the general public's." <u>Swineford v. Snyder</u> <u>County, Pennsylvania</u>, 15 F.3d 1258, 1270 (3d Cir. 1994). Courts apply the <u>Pickering</u> test to assess the constitutionality of the regulation. <u>See</u> <u>Pickering v. Board of Education</u>, 391 U.S. 563, 568 (1968). Under the <u>Pickering</u> test, a public employee is protected from adverse employment actions based on speech when that speech: (1) addresses a matter of public concern; and (2) outweighs "the government's interest in the effective and efficient fulfillment of its responsibilities to the public." <u>Azzaro v. County of</u> <u>Allegheny</u>, 110 F.3d 968, 976 (3d Cir. 1997) (quoting <u>Connick v.</u> <u>Myers</u>, 461 U.S. 138, 150 (1983)).

Whether speech is a matter of public concern depends on the "content, form, and context of a given statement." <u>Connick</u>, 461 U.S. at 147-48. A court must consider whether the statement relates to any matter of political, social, or other concern to the community, keeping in mind that having free and unhindered debate on matters of public importance is at the core of values protected by the Free Speech Clause of the First Amendment. <u>Id</u>. If the disputed speech is not on a matter of public concern, but rather addresses a private matter only, it enjoys no constitutional protection. <u>Id</u>. at 146.

In his complaint, plaintiff describes the November 6, 2007 exchange between him and Ms. Trott as "a casual conversation with a fellow school district employee about which candidates they

were each supporting for the office of School Director." Plaintiff also explained that "[Trott] asked what they were for up Croton[sic], I said we're backing all the girls. She said, after I leave here I'm going to work the polls up at Croton Church for [Mozzocio], I said good luck, you gotta do what you gotta do. End of conversation and I walked away." Appendix to Defendants' Concise Statement of Material Facts at Exhibit 15.

Here, the topic of conversation -- the election of a public official such as the president of the School Board -- is a matter of public concern. See Curinga v. City of Clairton, 357 F.3d 305, 312-13 (3d Cir. 2004). We hold, however, that defendants can limit this speech.

Defendants assert that they have a compelling interest in the effective and efficient fulfillment of employee responsibilities during work hours. Defendants rely on James v. Collin County, Tex., 561 F.Supp.2d 698, 706 (E.D. Tex. 2007), aff'd 535 F.3d 365 (5th Cir. 2008). In James, the court found that a public employee's "speech in soliciting ... political support during ... working hours [is] not protected by the First Amendment" because the employer's legitimate interest in promoting efficiency by protecting employees during work hours outweighs the employee's interest. Id. The parties have not identified, and the court has not found, a case where the Court of Appeals for the Third Circuit has addressed this precise issue.

19

Here, defendants' interest "in maintaining a functional workplace," see Defendants' Brief in Support of Motion for Summary Judgment at 12, outweighs plaintiff's interest in having a casual discussion about a local School Board election with another school employee during work hours. The election of local officials is obviously a contentious issue that has the potential to create conflict between employees. NCDS has a reasonable interest in ensuring that there is a good working relationship between its employees and that its employees are not disrupted during work hours.[3] Given the reasoning behind defendants' limits on plaintiff's speech, the court finds that defendants did not violate plaintiff's First Amendment rights by limiting his speech regarding a local election.

### 3. Qualified Immunity and Municipal Liability

Because we find no violation of plaintiff's First Amendment rights, see supra, we need not review whether NCSD would be liable under municipal liability or whether defendants Gabriel, Mozzocio, and Fulena are entitled to qualified immunity.

### B. Plaintiff's State Law Claims

Plaintiff also claims that defendants violated his rights under Article I, § 7 of the Pennsylvania Constitution. Plaintiff seeks an injunction against the conduct described in his complaint.

---

[3] Plaintiff admits that even though he was on break at the time of the conversation, he did not know if Ms. Trott was also on break.

20

Under 28 U.S.C. § 1367, federal courts "shall have supplemental jurisdiction" over state claims arising out of a common nucleus of operative fact with regard to the federal claims. Whether a federal district court will exercise supplemental jurisdiction over purely state law claims is within the court's discretion. See Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284 (3d Cir. 1993).

In determining whether to exercise supplemental jurisdiction, courts should consider the following factors: judicial economy, convenience, and fairness. United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Where federal claims are dismissed before trial, however, supplemental jurisdiction of state claims should be declined. Id.; Shaffer v. Bd. of Sch. Dirs. of the Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984).

Based on this well established law, we decline to exercise supplemental jurisdiction over plaintiff's state law claims. We base our decision on the fact that plaintiff's federal law claims are not viable and that judicial economy, convenience, and fairness weigh in favor of having a Pennsylvania state court decide the issues the arise under the Pennsylvania Constitution.

Plaintiff's state law claims, therefore, will be dismissed without prejudice to plaintiff's right to refile them in state court.

IV.  CONCLUSION

Because plaintiff has failed to establish that defendants retaliated against him for supporting certain political candidates, or that defendants improperly limited his First Amendment speech, Count I is dismissed with prejudice.  Count II is dismissed without prejudice.  As such, we must enter summary judgment in defendants' favor.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL COOK,                                    )
                                                )
                    Plaintiff,                  )
                                                )
          vs.                                   )   Civil Action No.  08-0089
                                                )
NEW CASTLE AREA SCHOOL DISTRICT;                )
GEORGE GABRIEL, Superintendent of               )
New Castle Area School District;                )
FRED MOZZOCIO, Former President                 )
of the Board of School Directors;               )
and PAUL A. FULENA, Director of                 )
Buildings & Grounds of New Castle               )
Area School District,                           )
                                                )
                    Defendants.                 )

ORDER

AND NOW, this 16th day of December, 2008, upon consideration of defendants' motion for summary judgment [doc. no. 24], IT IS HEREBY ORDERED that the motion is GRANTED. Count I is dismissed with prejudice. Count II is dismissed without prejudice to plaintiff's right to refile it in state court.

The Clerk of Court is directed to mark this case closed.

BY THE COURT:

_____, J.

cc:       All Counsel of Record